**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | : | CIVIL ACTION |
| ex rel. PEGGY RYAN, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | No.  05-3450 |
| | : | |
| ENDO PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | : | CIVIL ACTION |
| ex rel. MAX H. WEATHERSBY, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | No.  10-2039 |
| | : | |
| ENDO PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | : | CIVIL ACTION |
| ex rel. GURSHEEL S. DHILLON, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | No.  11-7767 |
| | : | |
| ENDO PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM**</u>

**ROBERT F. KELLY, Sr. J.**                                    **AUGUST 25, 2014**

   Presently before this Court, is Relator Peggy Ryan's ("Ryan") Motion for Appellate

Bond, and Relator Gursheel S. Dhillon's ("Dhillon") Response in Opposition.  For the reasons

stated below, Ryan's Motion is granted.

## I.   **FACTUAL BACKGROUND**

Due to the extensive factual background of this litigation provided in the previous Memorandum Opinions of this Court, we address solely the facts underlying Ryan's instant Motion.[1]  This litigation emanated from three separate *qui tam* actions filed by Relators, Ryan, Max Weathersby ("Weathersby") and Dhillon, alleging that Endo Pharmaceuticals, Inc. ("Endo") promoted the drug Lidoderm for uses that were not approved by the Food and Drug Administration nor medically accepted, thus causing false claims to be submitted to federal healthcare programs.[2]  On February 21, 2014, the United States of America (the "Government") elected to intervene on behalf of the Relators for settlement purposes.  (See Gov't's Notice of Election to Intervene, Feb. 21, 2014.)  On this same day, the Relators entered into a Settlement Agreement, whereby Endo agreed to pay approximately $171.9 million to resolve the alleged False Claims Act violations.  (See Gov't's Mem. on the Eligibility of Relators, at 1.)

After extensive briefing by the Government and the parties, we held that Ryan, as the first relator to file claims against Endo, was the sole relator eligible to recover the funds attained through the Settlement Agreement.  (See Order, June 23, 2014.)  In reaching this determination, we found that the first-to-file rule and the public disclosure ban precluded Dhillon from

---

[1] The full factual background for this litigation can be found at United States ex rel. Ryan v. Endo Pharmaceuticals, Inc., No. 05–3450, 2014 WL 2813103 (E.D. Pa. June 23, 2014).

[2] In Latin, the phrase *qui tam* is short for "*qui tam pro domino rege quam pro se ipso in hac parte sequitur*," which translates as, "who pursues this action on our Lord the King's behalf as well as his own." United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 509 n.1 (3d Cir. 2007) (quoting Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 769 n.1 (2000)); see also Black's Law Dictionary (9th ed. 2009).  Thus, a *qui tam* action permits private parties to bring suit to enforce the law on the Government's behalf and rewards successful plaintiffs with part of the recovery.  United States ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228, 231 n.1 (3d Cir. 2013) (quoting United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 647 n.1 (D.C. Cir. 1994)).

participating in the recovery of any of the funds.  See U.S. ex rel. Ryan, 2014 WL 2813103, at *9-10.

On July 21, 2014, the Court became aware, through the filing of a Notice of Appeal, that Dhillon was appealing our decision granting Ryan sole relator status to the United States Court of Appeals for the Third Circuit ("Third Circuit").[3]  (See Dhillon Notice of Appeal.)  Four days later, the Third Circuit stayed Dhillon's appeal until the post-decision motions filed by Dhillon were adjudicated by this Court.[4]

Upon receiving the Notice of Appeal, Ryan filed a Motion for Appellate Bond.  (See Ryan Mot. for App. Bond.)  In order to preserve her ability to collect the costs of litigation that she will possibly be entitled to under Federal Rule of Appellate Procedure 39 and 28 U.S.C. § 1920, Ryan seeks the imposition of an appellate bond in the amount of $25,000.  (Id. at 5.)  Ryan believes that this amount is reasonable without being a deterrent to Dhillon's ability to bring the appeal.  (Id.)  According to Ryan, an appellate bond is warranted in this case because "Dhillon's litigation history indicates that he will likely endeavor to undertake a long and costly appeal, regardless of merit (or lack thereof) of his position, and he is unlikely to pay costs even if so ordered by the Third Circuit or any other court."  (Id. at 4.)  Ryan supports this contention by providing extensive factual background relating to Dhillon.  (Id.)

---

[3]At the time of filing the Notice of Appeal, Dhillon was represented by counsel.  (See Dhillon Notice of Appeal.)  However, Dhillon is currently proceeding pro se.

[4]The Third Circuit is referring to two post-judgment motions filed by Dhillon in this matter. These are a Motion for Reconsideration and a Motion to Strike, which are the subject of separate Memorandum Opinions of this Court.

II.     **DISCUSSION**

In a civil case, under Federal Rule of Appellate Procedure 7, "the district court may

require an appellant to file a bond or provide other security in any form and amount necessary to

ensure payment of costs on appeal."  Fed. R. App. P. 7.  Thus, the district court is endowed with

wide latitude in determining whether an appellate bond is appropriate, and, if so, in what amount

it will be issued.  See Rossi v. Proctor & Gamble Co., No. 11-7238, 2014 WL 1050658, at *3

(D.N.J. Mar. 17, 2014).

The purpose of appellate bonds is to protect the appellee against the risk of non-payment

by an unsuccessful appellant.  Dewey v. Volkswagen of Am., Nos. 07–2249 & 2361, 2013 WL

3285105, at *2 (D.N.J. Mar. 18, 2013).  Factors considered in determining the necessity for the

issuance of a bond are: (1) whether the amount of the bond is necessary to assure adequate

security; (2) the risks that the appellant will not pay the costs if it loses the appeal; (3) the

appellant's financial ability to post the bond; and (4) whether the amount of the bond will

effectively preclude pursuit of the appeal.  Id.  Upon careful consideration of each factor, the

Court finds that an appellate bond is warranted in this case.

Ryan has demonstrated that the first two factors favor the issuance of a bond.

Specifically, Ryan asserts that "[P]ublic records show that Dhillon filed for Chapter 11

bankruptcy in 2008, has several pending liens related to tax debts and previous lawsuits, is

approximately $33,000 in arrears in child support, and has had costs repeatedly levied against

him in other recent litigation which he has not paid."  (Ryan Mot. for Appellate Bond, 5.)

In light of these facts, we agree with Ryan that "it is highly unlikely that Dhillon would willingly

pay any costs levied against him at the outcome of the appeal . . . thus burdening Ryan with the

costs associated with this litigation." (Id.)  Furthermore, even if costs were awarded to Ryan, she would have to institute collections against Dhillon in a foreign state.  This fact provides additional support for the need to issue an appellate bond to mitigate the risk of non-payment. Dewey, 2013 WL 3285105, at *3 (citing In re IPO Sec. Litig., 728 F. Supp. 289, 293 n.7 (S.D.N.Y. 2010)).

As to the third and fourth factors, we find that they militate slightly toward requiring a bond, but overall are not dispositive of the issue as a whole.  Dhillon's only assertion in relation to these factors is that he has been unemployed since 2011, and that "any further costs would be a hindrance to his right of appeal."  (See Dhillon Resp. in Opp'n, 3.)  We neither interpret this statement to mean that Dhillon cannot pay the required bond, nor that the imposition of an appellate bond will extinguish his ability to appeal, as Dhillon has neglected to provide any financial information that indicates an inability to post bond.  See Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998); see also Dewey, 2013 WL 3285105, at *2 (lack of proof of financial inability to pay bond weighs against finding bond not warranted).   As such, we find that factors three and four weigh slightly in favor of an appellate bond.

Now that we have determined that Dhillon must pay an appellate bond, it is up to the Court to determine the appropriate amount to be paid.  See Fed. R. App. P. 7.  This amount should cover the amount of costs that are potentially recoverable.  See Id.   In this context, the Third Circuit has interpreted costs under Rule 7 to include the expenses enumerated in Federal Rule of Appellate Procedure 39[5] and 28 U.S.C. § 1920.[6]  See Hirschensohn v. Lawyers Title Ins.

---

[5]The costs permitted under Rule 39 include:  (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal.  Fed. R.

Corp., No. 96-7312, 1997 WL 307777, at *2-3 (3d Cir. June 10, 1997); McDonald v. McCarthy, 966 F.2d 112, 115 (3d Cir. 1992).  Conspicuously absent from the catalog of costs permitted in the calculation of an appropriate sum for an appellate bond is attorneys' fees.  As a result of this omission, the Third Circuit has held that attorneys' fees are not to be included as costs under Rule 7b.  See Hirschensohn, 1997 WL 307777, at *2 (holding that attorneys' fees are distinct from the 'costs' defined by Rule 39).[7]  With this in mind, the Court finds that an appellate bond in the amount of $25,000 is not justified.  However, after careful consideration, we find a bond of $10,000 to be more appropriate in this case.  Accordingly, we order that Dhillon pay a $10,000 bond before proceeding with his appeal.

In reaching this decision, we note that Ryan is not wholly without protection in defending this appeal.  Rule 38 of the Federal Rules of Appellate Procedure provide that, "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice

_____

App. P. 39(e).

[6]The costs permitted under 28 U.S.C. § 1920 include:  (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.  28 U.S.C. § 1920.

[7]While we note that Hirschensohn is an unpublished opinion and, therefore, not binding, it has been universally followed within this Circuit.  See In re Certainteed Fiber Cement Siding Litig., No. MDL 2270, 2014 WL 2194513, at *3 (E.D. Pa. May 27, 2014) (denying attorneys' fees); Rossi, 2014 WL 1050658, at *2 (denying attorneys' fees and stating that the reasoning in Hirschensohn "remains sound"); O'Keefe v. Mercedes-Benz USA, LLC, No. 01-2902, 2003 WL 22097451, at *3 (E.D. Pa. June 4, 2003) (following Hirschensohn in denying attorneys' fees though noting that if the statute underlying the litigation allows for attorneys' fees they could possibly be included as costs); In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litig., No. MDL 1203, 2000 WL 1665134, at *4 (E.D. Pa. Nov. 06, 2000) (denying attorneys' fees).  We join the Courts within this Circuit that have been guided by its holding.

from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38.

III.   **<u>CONCLUSION</u>**

In consideration of the aforementioned reasons, we find an appellate bond in the amount of $10,000 to be appropriate in this case.  Accordingly, Dhillon must prepay this amount before proceeding with his appeal.

An appropriate Order follows.