UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA ex rel.
PEGGY RYAN,

    Plaintiffs,

v.

ENDO PHARMACEUTICALS, INC.,

    Defendant.

Case No. 05-CV-3450

**REPLY IN SUPPORT OF RELATOR PEGGY RYAN'S
MOTION FOR RELATOR'S SHARE AWARD**

    The Government's opposition to Relator Peggy Ryan's motion for relator's share demonstrates the unfortunate evolution of the relationship between a relator and the Government following the successful conclusion of a *qui tam* lawsuit, morphing from a collaborative effort into an adversarial posture once the issue of the relator's share award arises.  See *U.S. v. General Elec. ("TAF v. GE"),* 808 F. Supp. 580 (S.D. Ohio 1992), *aff'd in part and rev'd in part on other grounds sub nom. U.S. ex rel. Taxpayers Against Fraud v. GE*, 41 F.3d 1032 (6th Cir. 1994) (describing the government's adversarial "antagonism" toward a relator as a "mystery").  Peggy Ryan provided extraordinary support and assistance to the Government for nearly a decade, yet now finds her contribution to the successful outcome of this case minimized and even belittled by the Government as it seeks to limit Ryan to a relator's share to the bottom half of the prescribed range.  As detailed herein, however, the Government's position is sorely lacking in legal support for its proffered justifications for limiting Ryan's relator's share, and its characterization of Ryan's contributions to the Government's investigation is largely inaccurate.

I. **The Government failed to identify any factors which can be properly considered to reduce Ryan's relator's share award.** [1]

   A. **The size of the settlement is not an appropriate factor to consider in determining relator's share award.**

Despite the Government's lengthy arguments, the size of a settlement is not an appropriate factor in determining the percentage of a relator's share award. *U.S. ex rel. Merena v. SmithKline Beecham Corp.,* 52 F.Supp.2d 420 (E.D.P.A. Apr. 8, 1998), *rev'd on other grounds,* 205 F.Supp.3d 97 (3d Cir.2000)("An act of Congress provides for substantial awards in order that persons who acquire first-hand knowledge of false claims being presented to the Government will come forth and file meritorious qui tam complaints. The success of this legislation in continuing to achieve its goals can only be measured by unstintingly providing the qui tam awards dictated by Congress, **irrespective of the size of the awards**.")(emphasis added). The Government provides no case law or statutory support to the contrary.

Congress has repeatedly reviewed and revised the modern False Claims Act since its enactment in 1986 and has had ample opportunity to place a financial cap on relator's share awards if it so intended, yet it has not done so. "Congress did not establish a sliding scale to graduate the available percentages as the size of the recovery increases…The conspicuous absence of an explicit cap or mechanism to taper the available percentage argues forcefully against the government's position that the size of the recovery is a factor warranting consideration." *U.S. ex rel. Johnson-Pochardt v. Rapid City Reg'l Hosp.*, 252 F.Supp.2d 892, 903 (D.S.D. Feb. 26, 2003), citing *U.S. ex rel. Alderson v. Quorum Health*, 171 F.Supp.2d 1323, 1335, n. 37 (M.D. Fla. Nov. 8, 2001)(internal quotations omitted). Therefore, although the

---

[1] The Government contends that Relator's discussion "about her personal suffering as a result of this case" is "not an appropriate consideration for determining the size of the relator share award." But this is one of the Government's own "factors to consider for a possible increase in the percentage" from the DOJ Guidelines: "(14) the filing of the complaint had a substantial adverse impact on the relator."

Government cautions that a large award undermines the False Claims Act's goals, Congress and the courts disagree.

> **B.     A relator's share award should not be reduced because a case settles as opposed to going to trial.**

The Government's argument that a case must go to trial to justify a maximum relator's share award has been soundly rejected by multiple courts.  Simply, "[a] relator should not, therefore, receive a significantly lesser share in the proceeds simply because settlement negotiations were successful."  *Johnson-Pochardt*, 252 F.Supp.2d at 904; see also *U.S. ex rel. Pedicone v. Mazak Corp.,* 807 F.Supp. 1350, 1353 (S.D.Ohio Oct. 16, 1992), *overruled on other grounds,* 69 Fed.Appx. 719 (6th Cir.2003) ("This Court does not find any support for the government's position that the *qui tam* Plaintiff's share should differ depending upon whether the case is settled or tried.").  "[T]he case law is clear that Relators may deserve a substantial percentage of the recovery even though no trial is necessary.  Indeed, as a practical matter, the stronger the case and the more compelling the evidence at the time of filing and/or after discovery is completed, the less likely it is that a defendant will take the risk of treble damages and civil penalties being awarded at trial…."  *U.S. ex rel. Shea v. Verizon Comm.*, 844 F.Supp.2d 78, 90 (D.D.C. Feb. 23, 2012).

The Government's argument is particularly deficient in a case like Ryan's, where the investigation took nearly a decade and required extraordinary effort, cooperation, and patience by the relator which led to a significant damage model that the Defendant did not want to risk trebling.[2]  *See Johnson-Pochardt,* 252 F.Supp.2d at 904 (awarding 24% relator's share with minor reduction because case did not go to trial, but recognizing that relator did not "avoid

---

[2] If the total civil recovery was trebled and even the minimum $5,500 penalty was added for each of the thousands (or perhaps more) prescriptions resulting from the off-label marketing, Endo would have faced a judgment in the billions of dollars.

similar stress and actually bore additional burdens"); *Alderson*, 171 F.Supp.2d at 1337 (awarding 24% relator's share where relator "endured nearly two years" of exhaustive mediation).  As the Government points out, "the upper range of relator's recovery should be reserved for situations where the relator actively and uniquely aids the Government in the prosecution of the case." *U.S. ex rel. Burr v. Blue Cross & Blue Shield,* 882 F. Supp. 166, 198 (M.D. Fla. Mar. 23, 1995).  Nothing in that statement requires that the case be tried as opposed to settled.  The fact that Ryan's assistance resulted in evidence strong enough to push the Defendant to a settlement should be the foundation for an *increase* in Ryan's relator's share award, not a decrease.

Notably, Ryan's counsel could not locate any reported decisions where a relator wore a wire at the behest of the Government *and* where the case went to trial, supporting the notion that a case with the strongest evidence is likely to motivate even the most obstinate defendant to resolve the case before trial.  However, in recognition of circumstances where a relator undertakes the same risks and makes the same contributions as Ryan and *still* has to persevere through a trial, Ryan is requesting a relator's share award of 24% rather than the maximum of 25%.

**II.     The Government's representation of the investigation is inaccurate and seeks to establish an impossible standard for obtaining a relator's share award.**

The Government's representation of the Ryan's contributions to the investigation into Endo's off-label marketing practices is factually flawed.  First, the Government criticizes the content of Ryan's *complaint* for lacking certain details (although conceding it was Rule 9(b) sufficient), but neglects to acknowledge that Ryan provided that exact information during multiple meetings with the Government immediately after filing her complaint, and in countless

subsequent emails, phone conversations, and disclosure statements.[3]  There is not a single category of information that the Government sought from Ryan which Ryan was not able to provide.

Most significantly, Ryan's contributions, detailed at length in her Motion for Relator's Share Award, did not cease when the Government served its subpoena in January 2007.  *See* Declaration of Chris Mulhall in Support of Relator Peggy Ryan's Motion for Relator Share Award, Dkt. 72-5 at ¶4 ("From 2005 until 2012, I and other FBI agents worked closely with Peggy Ryan to develop the factual basis of the investigation.").  To the contrary, at the request of Nicole Mark, then the Assistant United States Attorney for the Eastern District of Pennsylvania, Ryan entered into an Agreement Regarding Common Interest and Disclosure of Information *after* the subpoena was served, enabling the Government to consult with Ryan on the meaning and significance of the subpoenaed documents.  *Id.* at ¶7 ("When Endo began producing documents in response to the subpoena, Ryan and her counsel assisted the FBI by interpreting and analyzing Endo records and documents.").  Until leaving her job in 2012 for health reasons, Ryan also continued to provide critical insider information which the Government would not have been able to access without Ryan (*i.e.,* confidential memos regarding the use of restricted material logs in 2008, voicemails from key executives relating to the company's internal investigation in 2010 and organizational changes in 2012, emails regarding inventory of Lidoderm promotional items in 2012, etc.).

Finally, the Government is dismissive of Ryan's efforts to push the case forward when the investigation appeared to be lagging.  In 2010, the Government did not need more evidence;

---

[3] There are various strategic reasons why a relator and her counsel may choose to include enough information in a complaint to satisfy Rule 9(b), but reserve additional information to be provided directly to the Government simultaneously or subsequent to filing.  There is no case law to support that a relator's contributions must come from her complaint versus any other vehicle.

by its own admission, it already had hundreds of thousands of documents and hundreds of hours of recorded conversations in support of Ryan's allegations.  After more than one newly assigned agent expressed a lack of familiarity with the case, Ryan and her counsel employed their unique resources to educate new agents and re-engage existing agents on the merits of the case.  Ryan's video was not intended to have law enforcement or evidentiary value.  It was intended to demonstrate to the Government the depth and breadth of the evidence supporting Ryan's allegations so the Government could present the case to Endo with confidence and conviction—and it succeeded.

In its attempt to diminish Ryan's contributions to the case, the Government advocates for an impossible standard by which no relator could ever qualify for a maximum relator's share in an intervened case.  For example, the Government acknowledges that the strength of Ryan's allegations led to a "substantial, multi-district investigation of Relator's allegations that involved agents from multiple government agencies," but then faults Ryan for the fact that her contributions "did not ultimately comprise 50 percent of the overall investigation."[4]  By this standard, Ryan could not win: she would face a reduced relator's share for providing such compelling information that multiple government agencies immediately were engaged in the case, but would also face a reduced relator's share had she provided broad or unsupported allegations that required the Government to develop the entire case on its own.

Congress already factored in that the Government will be required to expend some effort in an intervened case when it established a lower relator's share bracket for intervened cases than

---

[4] The Government does not explain its basis for this 50% calculation.  In addition to the documents she produced herself, Ryan undisputedly aided in drafting the 2007 subpoena, so she can be at least partially credited with the helping the Government obtain the "hundreds of thousands" of documents produced in response.  Ryan was also the only individual ever wired, so she is solely responsible for that critical evidence.  Thus, Ryan assumes the Government is referring purely to the number of man-hours put into the case, in which Ryan alone obviously cannot be expected to do as much or more than an entire task-force of assigned agents from eleven different Government agencies.

in non-intervened cases. *See* 31 U.S.C. § 3730(d)(1) and (2)(setting a relator's share award range of 15-25% for an intervened case versus 25-30% for a non-intervened case). Nothing in the Government's opposition indicates that its investigatory efforts in this case were extraordinary. Absent a herculean effort by the Government, the 15-25% bracket already factors in the Government's efforts, and therefore the Government's routine investigation is not a sufficient basis to reduce Ryan's award when she did every task asked of her for more than nine years.

**III.     Ryan's relator's share award should be placed in an interest-bearing account by the Government or should be conditionally distributed pending the resolution of Dhillon's appeal.**

The Government indicates that it cannot distribute Ryan's relator's share award because it cannot "risk the chance" of having to recoup the funds from Ryan in the event that the Third Circuit reverses, remands, or vacates this Court's order recognizing Ryan as the sole relator entitled to a relator's share award. The Government also concedes that the funds are in a non-interest bearing account because the Government "is not a fiduciary of the settlement proceeds." The Government does not say that it *cannot* place the funds in an interest-bearing account, simply that it has not done so. Justice and fairness dictate that Ryan should not face adverse financial consequences for suffering through protracted, inane litigation at the hands of a third-filed relator who the Government allowed to participate in the settlement instead of dismissing outright. The Government would suffer no adverse consequences by placing the funds into an interest-bearing account, while Ryan suffers significant financial harm every month that the funds languish in the Government's stagnant account. Therefore, the Court should order the funds to immediately be placed in an interest-bearing account pending the resolution of Dhillon's appeal. Alternatively, the Government's concerns about recouping distributed funds from Ryan

can be ameliorated by immediately releasing the funds to Ryan on the condition that she hold the funds in escrow until released by the Court. Either option would protect the government's access to the funds if Dhillon were, somehow, successful on appeal, yet still would enable Ryan to begin earning interest[5] on her rightful award.

**IV.     Conclusion**

It is unfortunate that Ryan and the United States of America have reached this impasse after Ryan's dedication and commitment to bringing this case to a successful resolution. Congress has directed that the United States pay up to 25% of a False Claims Act recovery in an intervened case as the award for bringing and aiding in the prosecution of a successful case. Congress did not place a financial cap on the recovery, Congress did not provide that the percentage of a relator's share award is dependent on whether a case went to trial, and Congress did not require that a relator contribute as much or more than a multi-agency task force in order to earn a relator's share in the top half of the prescribed range.

Rather, Congress directed that a relator be awarded a relator's share award, "depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. 3730(d)(1). The FBI agent leading the investigation recognized "the exemplary efforts and significant contributions of Peggy Ryan," this Court has previously acknowledged that Ryan went to "extraordinary lengths to provide further information to aid the Government in prosecuting the FCA action," and the Medicaid Participating States awarded Ryan with a 22%

---

[5] The interest contemplated in this brief is separate and apart from the post-judgment interest paid by the Defendants. The United States received $2,433,033 as post-judgment interest which will be included in the relator's share award, such that the total percentage will be drawn from $139,967,038. The Medicaid Participating States also received post-judgment interest on their portion of the recovery and paid Ryan's 22% relator's share award from the total amount of the proceeds, including interest. The United States does not oppose this.

relator's share award[6] in recognition of her efforts in this case. Declaration of Chris Mulhall, Dkt. 72-5 at ¶11; Dkt. 41 at 26. Ryan is the prototypical relator who should be awarded a 24% relator's share award in recognition of her courageous, selfless, and enduring efforts in the successful prosecution of this case.

WHEREFORE, Relator Peggy Ryan respectfully requests that this honorable Court order the United States of America to pay Ryan 24% of the federal civil recovery as a relator's share award[7] in recognition of Ryan's extraordinary contributions to the Endo Pharmaceuticals settlement.

Respectfully submitted this 23rd day of January, 2015,

> /s/ John R. Newcomer_____
> John R. Newcomer
> jnewcomer@jameshoyer.com
> Christopher C. Casper
> ccasper@jameshoyer.com
> **James, Hoyer, Newcomer**
> **& Smiljanich, P.A.**
> 4830 W. Kennedy Blvd.
> One Urban Center, Suite 550
> Tampa, FL   33609
> Tel.  (813) 397-2300
> Fax  (813) 397-2310
>
> *Counsel for Peggy Ryan*

---

[6] Although Ryan believes that her efforts would have justified a 24% relator's share from the state portion of the settlement as well, she accepted 22% to settle the issue without litigation.

[7] The United States' brief indicates that 24% of the total federal settlement would be $33,008,161. That calculation is incorrect. Twenty-four percent of $139,967,038 is $33,592,089.

**Certificate of Service**

I, John Newcomer, hereby certify that Relator Peggy Ryan's Reply in Support of Motion for Relator's Share Award was served upon all parties of record this 23rd day of January, 2015, via the CM/ECF service.

                                                __/s/ **John R. Newcomer**_____
                                                John R. Newcomer, Jr. (PHV)